DOYLE GARTON

*v.*

STATE OF TENNESSEE.

(*Nashville*, December Term, 1959.)

Opinion filed February 5, 1960.

ROBERT L. LITTLETON, Dickson, JOHN H. HENDERSON, Franklin, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE S. A. MARABLE delivered the opinion of the Court.

The plaintiff in error was indicted jointly with Howard Hamilton, Carl Garton and Bobby Cathey, for grand larceny.  A severance was subsequently granted as to the plaintiff in error, hereafter referred to as the defendant, and he was tried separately on said charge, with the result that he was found guilty and his punishment fixed at three years confinement in the State penitentiary, from which he has appealed and filed five assignments of error.

The first three assignments of error may be briefly summarized as follows: That the evidence preponderates against the verdict and in favor of the innocence of the accused.

The fourth assignment is that the trial judge erred in refusing to permit the counsel for the defendant to cross-examine one of the State's witnesses, Carl Garton, regarding a previous conviction of said witness.

The fifth assignment is that there was no evidence to corroborate the testimony of three witnesses for the State, all of whom were accomplices of the defendant.

The proof shows that two cows of the total value of of $210, belonging to F. E. Walker, were stolen from a barn on his farm in Williamson County, Tennessee, on Monday night, November 17, 1958.

The principal witnesses for the State were, Carl Garton, Howard Hamilton and Bobby Cathey, all of whom admitted participation in said theft. Their testimony, which was substantially the same, with no material variances, was in substance as follows:

That on the afternoon of November 17, 1958, the defendant came to Carl Garton's home, while Howard Hamilton and Bobby Cathey were there, bringing with him a pint of whisky. That the three younger men, Carl Garton and Bobby Cathey, both aged twenty-one years, and Howard Hamilton, aged twenty-two years, drank the whisky, and the defendant drank either some of the whisky or some beer while there. That, after a few drinks had been taken, the defendant told them that he wanted them to help load some cattle, that he had a deal he wanted to make with them, and for them to come to Dickson that afternoon. Later in the afternoon, the three young men went to the DeLuxe Tavern near Dickson, where they met the defendant, who invited them into the tavern and they drank some beer. While there the defendant told them that he had a deal worked up about

some cattle and wanted them to help him get them, promising to pay them $200 for what they did. They agreed to help get the cattle, and further agreed to meet the defendant at another tavern known as the Blue Moon that night at 7:00 o'clock. At the appointed time the three younger men met the defendant at the Blue Moon Tavern, where Carl Garton got in the defendant's truck with the latter, and they proceeded toward the place where the cattle were to be gotten on Walker's farm. The other two men, Hamilton and Cathey, followed in Hamilton's car. The defendant stopped his truck at a service station operated by T. H. Bissinger, at the junction of State Highways Nos. 100 and 46, where the defendant purchased $2 worth of gasoline. While the gasoline was being put in the defendant's truck, the car occupied by Hamilton and Cathey drove up, and the driver of the car blinked the car's lights, whereupon Carl Garton got out of the truck and told the other men to follow him and the defendant in defendant's truck. Carl Garton then got back into the truck and the defendant drove the truck off in the direction of Williamson County, with the other two men following in Hamilton's car. The truck and car were parked on the side of a road near a pasture on Walker's farm. All four of the men then walked across a pasture to Walker's barn, where the two cows were confined, placed ropes on the cows and led them back to the truck, where they were loaded into the truck. Carl Garton and Hamilton got in the truck with the defendant, and the latter drove the truck to his home near Colesburg in Dickson County where the two cows were unloaded on the defendant's premises. Bobby Cathey drove the car back to Colesburg. All four of the men then got together again and went to a farm owned by a Mr. Deal, located

in Dickson County, where they stole three more cows, which were also taken to the premises of the defendant and there unloaded. That none of the three men assisting the defendant in the theft of these cattle ever received the $200 promised to them by the defendant, or received any money from the defendant, except Carl Garton who was given $10. That the theft of said cattle occurred during the night of November 17, 1958. That neither Carl Garton, Hamilton or Cathey owned any cattle, or offered to sell, or did sell, any cattle to the defendant. That the theft of said cattle originated with the defendant and they were only assisting him in getting the cattle at his insistance and request. That Carl Garton and Hamilton were well acquainted with the defendant, but that Bobby Cathey had never seen or known the defendant until November 17, 1958.

T. H. Bissinger, who operates a service station and garage at the junction of State Highways Nos. 100 and 46, saw the defendant at his service station between 6:30 and 7:30 o'clock, on the night that it appears that the cattle in question were stolen. He testified that the defendant drove up to his place of business in a pickup truck with sides, and bought $2 worth of gasoline. That one other man was in the truck with the defendant, and shortly a car came in behind them with two people in it, but witness knew none of the men except the defendant. That one of the men in the car called to the man in defendant's truck, and, as witness believes, called him Carl. That the truck and car both came from the same direction, from towards Dickson, and when defendant's truck left it was headed east in the direction of Nashville and Williamson County (which was in the direction of F. E. Walker's farm, from which the cattle were stolen).

That he talked with defendant for five or ten minutes, and defendant asked him if he still owned some white faced cattle that defendant had looked at some time previously.

The defendant, a livestock dealer, residing near State Highway No. 46, about half way between Colesburg and the junction of State Highways Nos. 46 and 100, in Dickson County, testified in his own behalf. He stated that the two cows (subsequently ascertained to have been stolen from the farm of F. E. Walker in Williamson County) were brought to his place in Dickson County, in his truck, by Carl Garton, Howard Hamilton and Bobby Cathey, but contended that he had loaned his truck to Carl Garton on the night of November 17, 1958, to get some cattle that he understood belonged to Bobby Cathey and to bring them to his place in Dickson County to sell to him, and that he bought the cattle from Bobby Cathey and paid the latter $400 in cash for them. He denied that he was at the home of Carl Garton during the daytime on Monday, November 17, 1958 (but in this he is contradicted by the testimony of Mrs. Kathleen Garton, mother of Carl Garton, who testified that she saw him there and that he talked with the other three men, but she did not hear their conversation). He further stated that he saw the three men at the DeLuxe Tavern that afternoon about 3:00 o'clock, when Carl Garton told him that Bobby Cathey had some cattle that he wanted to sell to him, and that the cattle were in the Fairview community. That he told them that he couldn't look at the cattle that afternoon but would try to see them the next day or the day following. That he then went home, and after eating supper went to the Blue Moon Tavern, getting there about 6:30 P.M., and that

he saw the three men there, but only spoke to them, and that he left the tavern about 7:30, to go to the home of one Gene Barnhill to get a jacket. That on the way he was stopped by Carl Garton, who flashed a light on his truck and asked him to pull in near a service station as he (Carl Garton) wanted to talk with him. That defendant stopped at the service station, where he bought $2 worth of gasoline for his truck. That while there Carl Garton told him that Cathey was going to sell the cattle to some one, and asked defendant to lend him his truck to get the cattle and bring them to defendant's home to sell them to him. That defendant agreed to let them have his truck for that purpose and told Carl Garton to come to defendant's home and pick up the truck as he (defendant) was going home. That he went home and retired about 8:30 that night. That some time later in the night the three men came to his home and awakened him, and that he gave Carl Garton the keys to his truck. That the three men left with his truck and returned to his home about 7:00 o'clock the next morning with five cattle in it, and that he then agreed to buy the cattle and paid Cathey for them, the cattle being left in his possession. That he kept one of the cows, which he had butchered and placed the meat in his deep freezer after having it processed at a Dickson food locker. He testified that he took the other cattle to Camden and sold them there for $413. After the cattle had been traced to his home, he admitted to the officers investigating the theft that he had killed and kept one of the cows for food and had sold the others at Camden, but claimed that he had bought the cattle from Bobby Cathey and did not know that they were stolen, and contended that he had only loaned his truck to the men to bring the cattle to his home

for the purpose of selling them to him. He denied any participation in, or knowledge of, the theft of the cattle.

Mrs. Doyle Garton, the defendant's wife, testified that her husband left their home about 6:00 o'clock on the evening of November 17, 1958, saying that he was going to the Blue Moon Tavern, and that he returned home about 7:30 or 8:00 o'clock and went to bed about 8:30. That later during the night some one came to the door of their home, and her husband got up and went to the door and returned to bed stating that Carl Garton was there and wanted to get his truck to use. That about 6:45 the next morning the three men returned with the truck and a car with some cattle in the truck.

Several other witnesses testified both for the State and the defendant, some being only character witnesses for the defendant, and others, including F. E. Walker, the owner of the cattle stolen, testifying as to various incidents considered unnecessary to set out in detail in this opinion.

The first, second, third and fifth assignments of error may be considered together, for there can be no question about the guilt of the defendant, if there is sufficient corroboration of the testimony of Carl Garton, Howard Hamilton and Bobby Cathey, the three admitted accomplices of the defendant in the theft of the cattle involved.

The rule is, that, to sufficiently corroborate the testimony of the accomplices, there should be some fact testified to entirely independent of the accomplices' evidence, which, taken by itself leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it. The corroboration must

consist in some fact or circumstance that affects the identity of the party accused. The corroboration is sufficient that satisfies the jury of the truth of the accomplices' statements. *Clapp v. State,* 94 Tenn. 186, 195, 30 S.W. 214.

One of the latest and most enlightening statements pronounced by our courts, with reference to the sufficiency of evidence to corroborate the testimony of an accomplice in the commission of a crime, is to be found in a most able opinion by Mr. Justice Burnett in the case of *Stanley v. State,* 189 Tenn. 110, 222 S.W.2d 384, 386, from which we quote the following excerpts:

" 'The degree of evidence which shall be deemed sufficient to corroborate the testimony of the accomplice is for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice.' (Quoting from *Clapp v. State,* supra.)

"This Court has likewise held that rather slight circumstances may be sufficient to furnish necessary corroboration. *Winfree v. State,* 174 Tenn. 72, 123 S.W.2d 827. The sufficiency of corroborating evidence where the testimony of the accomplice is in the main depended upon, depends upon the particular facts of each case. The weight of this testimony, that is, of the accomplice, corroborating the accomplice are ordinarily questions for the jury to determine. 'That is to say, when the trial judge finds that there is some corroborative evidence, it is his duty to submit it to the jury for them to say, first, whether it is worthy of

belief, and secondly, whether, if true, tended to connect the defendant with the commission of the crime charged. It is not necessary to show by independent proof a link between the accomplice's testimony and the corroborative proof; when the proof claimed to be corroborative tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy a jury that the accomplice is telling the truth, it is sufficient. For this purpose, if the accomplice is corroborated as to some material fact or facts, the jury may from that infer that he speaks the truth as to all.' Wharton's Criminal Evidence, Vol. 2, Section 754, page 1272.

"It is not necessary that the corroboration extends to every part of the accomplices evidence. The same authority last above quoted from says.

" 'The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Moreover, if the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.' Section 753, page 1271, supra.

\* \* \* \* \* \*

"These proven facts certainly entitle the jury to draw reasonable inferences therefrom and this Court will not substitute its judgment or inferences from these proven facts, this being a function of the jury. *Foster v. State,* 180 Tenn. 164, 172 S.W.2d 1003.''

In this case the corroboration, arising from facts and circumstances, clearly proven, and relied on by the State, may be summarized as follows:

(1) The defendant and the three accomplices, Carl Garton, Howard Hamilton and Bobby Cathey, were together for a time at the home of Carl Garton during the day preceding the night on which the cattle were stolen, November 17, 1958.

(2) The defendant and the three accomplices were together at the DeLuxe Tavern in Dickson County about 3:00 o'clock, P.M., on the same date above mentioned.

(3) The defendant and the three accomplices were together at the Blue Moon Tavern between 6:30 and 7:30 o'clock, on the night of the same date.

(4) The defendant and the three accomplices were together at a service station operated by T. H. Bissinger at the junction of State Highways Nos. 46 and 100, some time between 6:30 and 7:30 o'clock, on the same night that the cattle were stolen. Said service station is located on the roadway leading in the general direction from defendant's home towards the farm of F. E. Walker in Williamson County, from which farm said cattle were stolen.

(5) The defendant was driving his pickup truck with sides attached, being the same truck in which said cattle were later that night transported from Walker's farm to defendant's home, when he drove up to Bissinger's service station above mentioned. Carl Garton was in the truck with defendant at that time, and the other two accomplices drove up in a car immediately after the truck stopped at the service station. Both the truck and the car came from the same direction.

(6) While at Bissinger's service station and gasoline was being put in the tank of the truck, Carl Garton got out of the truck and had a brief conversation with the other two men in the car, and then returned to the truck.

(7) After obtaining gasoline for his truck, the defendant, accompanied by Carl Garton, drove the truck away, leaving the service station about 7:00 o'clock, P.M., and headed in the direction of Williamson County, in which county Walker's farm from which the cattle were stolen, is located. The other two men in the car also left the service station immediately after the truck left.

(8) The defendant's general movements on the night of November 17, 1958, were away from his home and towards Williamson County.

(9) Although the defendant contended that he was going to the place of Gene Barnhill to get a suede jacket that night, in explanation of his presence in the vicinity of Bissinger's service station, according to his own testimony he did not go to Barnhill's but says that he went back home.

(10) Barnhill was not called as a witness for the defendant to support the latter's contention that he had such a jacket for the defendant, although the latter testified that he had talked with Barnhill previously about such jacket.

(11) The cattle stolen were hauled from Walker's farm to the defendant's home in the defendant's truck.

(12) The defendant had possession of the stolen cattle and disposed of them promptly.

The contention of the defendant that he bought the cattle involved from Bobby Cathey and paid him for them is denied by Cathey, Hamilton and Carl Garton. There is no proof whatsoever to support the testimony of the defendant on this point.

The defendant testified that he never knew Carl Garton "too much", although distantly related, that he only knew Hamilton by sight, and did not know Cathey. His insistence that he loaned these men his truck to haul cattle at night, under all of the circumstances appearing, especially in view of his admitted activities during the day and night of November 17, 1958, and that he did not know that the cattle had been stolen, and that he purchased the cattle from a man he did not know, does not bear the stamp of credibility.

We think that the testimony of the three accomplices in this case is sufficiently corroborated by a number of material facts and circumstances from which the jury was well warranted in inferring that the accomplices spoke the truth in this case, and that there is evidence fairly tending to connect the defendant with the theft of said cattle. The Court held in the case of *Winfree v. State*, supra, that slight circumstances may be sufficient to furnish necessary corroboration. In the present case the circumstances, in addition to proven facts, are more than slight, and the guilt of the defendant is the only reasonable conclusion that can be reached. Moreover, in considering the assignments of error based upon the testimony, this Appellate Court must apply the rule that credibility of witnesses and conflicts in testimony have all been settled by the verdict of the jury. *Hargrove v. State*, 199 Tenn. 25, 281 S.W.2d 692.

The first, second, third and fifth assignments of error are, accordingly, overruled.

The fourth assignment of error charges that the trial judge erred in refusing to permit counsel for the defendant to cross-examine the state's witness, Carl Garton, regarding a previous conviction of said witness.

■ Counsel for the defendant asked said witness this question, "Have you ever been convicted of attempted robbery?" Objection thereto was made by the Attorney General and the witness did not answer the question. The trial judge then excused the jury, at the request of the Attorney General, and in the absence of the jury other questions were asked the witness, including this one by counsel for the defendant, "Were you convicted on a bad check count?" The trial judge remarked, "That does not involve moral turpitude." While the record of the proceedings during the absence of the jury is not very clear as to the facts pertaining to any prior conviction of the witness, it does appear that he was convicted in some court, for some offense not stated, when he was 16 or 17 years of age, sentenced to the State Training School, and upon becoming 18 years of age he was transferred to the State penitentiary. During these proceedings, the trial judge said, "Gentlemen, unless you can show that he was convicted in the Circuit Court the objection can be sustained. If he was convicted in Juvenile Court it will not be acceptable." Later the trial judge said, "Gentlemen, he was not tried in the Circuit Court for anything involving moral turpitude. Call the jury." The objection of the State to cross-examination on said matter was sustained, and the defendant excepted to this action of the court.

In our view of this case, the fourth assignment of error above stated is unsubstantial and raises no question material to a determination of the case or affecting the merits of the verdict of the jury and judgment of the trial court, for the reason that the other two accomplices testified virtually to the same state of facts as the witness, Carl Garton. Even if the trial judge had erred in refusing to permit counsel for the defendant to cross-examine said witness as to a previous conviction, such would have been harmless error under all of the facts and circumstances shown by the record in this case. Sections 27-116 and 27-117, Tennessee Code Annotated. If the testimony of Carl Garton should be excluded from consideration there is ample evidence remaining to support the verdict of the jury and the judgment of the trial court.

"The processes of the court and the manner and mode of the trial are intended to develop the main question of the guilt or innocence of the defendant, and when the guilt appears plainly, unequivocally, and beyond all doubt, this court will not reverse, unless grave errors have been committed, which would change the record, and show the defendant either not guilty, or put his guilt in doubt. While it is the desire of this court that no innocent men shall suffer for want of a fair trial, it is the duty of the court at the same time to see that no guilty one shall escape through a mere irregularity or technicality that does not and cannot affect the merits which in every criminal case is the guilt or innocence of the accused." *Wilson v. State,* 109 Tenn. 167, 178, 70 S.W. 57, 60; *Hamblin v. State,* 126 Tenn. 394, 150 S.W. 89.

For the reasons above indicated, the fourth assignment of error is deemed insufficient in any view, and whether or not the trial judge erred with reference to the matter complained of, to justify this Court in overturning the verdict of the jury and judgment of the trial court in this case.

After a careful investigation of the authorities, and under the record as a whole, we are satisfied with the conviction of the defendant, and the same must be affirmed.