# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER SESSION, 1998



**FILED**

March 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9802-CC-00039** |
| | ) | |
| Appellee, | ) | |
| | ) | **HENRY COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. JULIAN P. GUINN, JUDGE** |
| **JERRY WAYNE PATTERSON,** | ) | |
| | ) | |
| Appellant. | ) | **(BURGLARY)** |

FOR THE APPELLANT:          FOR THE APPELLEE:

**GUY T. WILKINSON**          **JOHN KNOX WALKUP**
District Public Defender          Attorney General & Reporter

**W. JEFFREY FAGAN**          **CLINTON J. MORGAN**
Assistant Public Defender          Assistant Attorney General
117 North Forrest Avenue          2nd Floor, Cordell Hull Building
Camden, TN 38320-0663          425 Fifth Avenue North
         Nashville, TN 37243

         **G. ROBERT RADFORD**
         District Attorney General

         **STEVEN L. GARRETT**
         Assistant District Attorney General
         P.O. Box 94
         Paris, TN 38242

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

Jerry Wayne Patterson, the Defendant, appeals as of right from his convictions in the Henry County Circuit Court. Following a jury trial, Defendant was found guilty of the offenses of burglary, criminal attempt to commit burglary, and theft of property less than five hundred dollars ($500.00). Defendant's only issue on appeal is whether the evidence was sufficient to justify a rational trier of fact finding guilt of these offenses beyond a reasonable doubt. We affirm the judgment of the trial court.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the

evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

George Edwin Wofford testified that he is the owner and proprietor of Wofford's Nursery in Paris, Tennessee. Wofford's Nursery is located at 1414 East Wood, approximately two (2) blocks from the Avalon Motel. Ordinarily, Wofford's employees arrived at work between the hours of 7:00 and 7:30 a.m., although Wofford did receive deliveries of stone during the early morning hours from overnight trucks from Arkansas. On June 9, 1997, stone was delivered by the Stevens Company to the nursery. Wofford was called to the nursery between the hours of 4:00 and 5:00 a.m. because the alarm had gone off. The truck driver from Stevens Company was there when Wofford arrived at the nursery.

Upon his arrival, Wofford discovered that the back door to his office, a metal clad door, was completely torn open. A filing cabinet was kept next to his desk in that office, and the filing cabinet typically had money in it. Wofford recalled that the Defendant had worked as his employee approximately nine (9) months prior to this incident, and that Defendant would have had knowledge that money was kept in that filing cabinet. On this particular night, Wofford thought that there was a money bag of change from the Coke machine in the filing cabinet, but could not recall for sure. Wofford could not tell that anything was missing from the nursery, but the entire door and door frame to his office had to be replaced.

Rayford Anthony Caldwell, the codefendant, testified that he had been friends with the Defendant for the past two (2) years. On June 9, 1997, he and the Defendant rented a room with a woman at the Avalon Motel. The woman had earlier

-3-

passed out after they had all been drinking. Caldwell and Defendant then discussed taking a truck during the early morning hours of June 9, 1997. In order to break into the truck, Caldwell and the Defendant contemplated on how to get a screwdriver which they could insert in the steering column and turn into the key hole. They left on foot from the Avalon Motel looking for a service station. While en route, they passed by Wofford's Nursery where the Defendant had been an employee. They decided to walk around the back of the nursery, but they ran into a truck driver and had to speak to him although Caldwell could not recall the entire extent of their conversation. Caldwell admitted that they represented themselves to the truck driver as employees of the nursery. They left the truck driver and continued to go around the back of the building where they stopped at the back door and both kicked it once or twice. Caldwell stated that nothing happened and they left. The alarm was not set off at that time.

Defendant and Caldwell left and continued to walk towards Melton's service station. They "messed with" a window at the side of the building trying to enter the building. When they were unsuccessful, they walked to the front of the building and Defendant broke out a window with a piece of metal. They both entered the building, where they saw tool boxes, cars and a Harley Davidson motorcycle. Caldwell remembered "how pretty it [the motorcycle] was and how much [he] wanted it." Caldwell raised the back door and pushed it out, but he did not know where the Defendant was at that time. Caldwell did not take any money from Melton's. He pushed the motorcycle to the road, dropped it, then pushed it back to the parking lot, sat down on it, cranked it and then drove it away. Before driving it away, he heard an alarm sound from the direction of Wofford's Nursery. Caldwell thought the Defendant had been gone for approximately fifteen (15) minutes.

-4-

After the alarm sounded, he drove back toward the Avalon, passing Wofford's Nursery where he spotted a city police car. He pulled around back of the motel and shut the motorcycle off. As he was trying to hide the motorcycle, it fell on top of him and the Defendant arrived in time to help him. The police officer had followed Caldwell to the motel. Caldwell was taken into police custody by the Paris Police Department. On the way to the police department, Caldwell saw the truck driver they had earlier seen at Wofford's Nursery. Caldwell pled guilty to the offenses of attempted burglary, theft of property, and burglary and was serving his sentence at the time of the Defendant's trial.

On cross-examination, Caldwell admitted that he had given a contradictory statement to the Paris police officers the morning following his arrest. He read it to the jury as follows:

> I never went into Wofford's Nursery. I crawled through a broken window in the front of the store at Melton's Service Center. The window was already broken. I did not break it. I walked around for a minute or two, and then I saw the motorcycle. I flipped a chrome switch, it started and I drove it to the motel. I was very drunk. I need help. I walked from the motel to Melton's Service Center.

Robert F. Shankle, manager of Melton's Service Center, was called down to his station during the early morning hours of June 9, 1997. Melton's Service Center is in the general vicinity of Wofford's Nursery, on the same side of the street with an optometrist's office in between the two. When Shankle arrived, a motorcycle they were storing there was gone and the drawers in the office had been ransacked. Some money was missing from the cash drawer which was lying in the middle of the floor. The value of the motorcycle was approximately $12,000.00. A set of tire tracks with a set of footsteps on each side were found inside, with additional

footprints from one side of the shop into the other.  The file cabinet drawers had been pulled open, with the desk drawers opened and rifled through.  Shankle kept a zippered bank bag with his bank deposit for the next day in the drawers, and the zippered bag had been opened and an envelope with checks and some cash had been taken out.  Approximately $100.00 was taken from Melton's.  Entry was made into the business through a broken out window on the front bay door of the west end of the building.

Robert Douglas Futrell, shift sergeant with the Paris Police Department, saw the Defendant and Caldwell together just after midnight on June 9, 1997.  They were standing at Patriot's Corner, approximately four (4) blocks west of the Avalon Motel.  He later responded to a burglary call at approximately 4:13 a.m. at Wofford's Nursery.  When he arrived, Futrell saw a semi truck in the rear of the building and he interviewed the driver.  Futrell was advised by the driver to search for employees of the nursery and was given a description of the two (2) subjects.  Futrell also learned that a deputy spotted two (2) subjects in front of Wofford's Nursery approximately ten (10) minutes prior to the alarm going off.

After ten (10) minutes, Futrell observed Caldwell driving down the street on a motorcycle.  As soon as he saw Caldwell, Futrell went to his patrol car and followed him to the Avalon Motel. When he pulled into the parking lot, he turned his lights out because he knew Defendant and Caldwell were staying there.  As Futrell rounded the building, he observed Caldwell and the Defendant attempting to push the motorcycle around the building into an alcove. They were standing no more than thirty (30) to fifty (50) feet from the entrance to their motel room.  The Defendant was fully clothed.

Futrell jumped out of the car and both Caldwell and Defendant dropped the motorcycle and ran for their room, Number 48. Futrell was able to grab hold of Caldwell, so he handcuffed him and took Caldwell into custody. By that time, Defendant had gone into Room Number 48. Officer Cagle arrived and they approached the door to Room Number 48, then knocked. Defendant came to the door naked, asking "what the hell we wanted, he hadn't done anything and he had just been in his room having sex with the lady that was laying on the bed." Futrell observed the woman lying on the bed, and she appeared to have passed out due to intoxication. They could not rouse her, so they had to call an ambulance. They then took Defendant into custody.

On their way to the police station, they transported Caldwell and Defendant back down to Wofford's for the truck driver to identify.

Gary Thomas Cagle, corporal with the Paris Police Department, was on patrol during the early morning hours of June 9, 1997. He identified a clear plastic bag which he took possession of from the room occupied by Caldwell and the Defendant that night. He found it on a night stand near the head of the bed, with a total of $119.50 inside.

Earlier that evening, Cagle observed the Defendant and Caldwell together at Patriot's Corner just after midnight. Thereafter, between 3:30 to 4:30 a.m. he saw the damage at Wofford's Nursery. He then went to Avalon Motel in an attempt to apprehend Caldwell. When he arrived, Futrell advised him that Defendant had run in to the motel room. Caldwell was already in custody at that time. They then went

together and knocked on the motel door, and Defendant answered the door nude.

Defendant argues that the only person who can place him at either Wofford's Nursery or Melton's Service Center is the co-defendant, Rayford Caldwell. He further alleges that Caldwell's testimony fails to place the Defendant at the nursery at the time of the alarm. A defendant, of course, cannot be convicted upon the uncorroborated testimony of an accomplice. Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811, 814-15 (Tenn. 1959). The general rule is that there must be some fact testified to entirely independent of accomplice testimony which, taken by itself, leads to an inference not only that a crime has been committed but that the defendant is implicated in that crime. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460, 463 (Tenn. 1963). Only slight circumstances, however, are required to furnish the necessary corroboration. Garton v. State, 206 Tenn. 79, 332 S.W.2d 169, 175 (Tenn. 1960) (citations omitted).

Defendant was convicted of criminal attempt based upon Defendant's attempt to commit burglary at Wofford's Nursery. This offense is committed when a person acts with the kind of culpability otherwise required for the offense to commit burglary and acts with the intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Tenn. Code Ann. § 39-12-101(a)(3). Caldwell testified that he and the Defendant approached Wofford's Nursery and ran into a truck driver as they attempted to go to the back of the building. From Caldwell's testimony, the two were in search of some tools so that they could steal a truck. They spoke to a truck driver who was there and represented themselves to be

employees of Wofford's Nursery, then continued towards the back of the building. Caldwell stated that each of them attempted to kick in the back door of the nursery, but that they were unable to complete the act. However, George Wofford, the owner of the nursery, testified that the back door and its frame were completely torn open. Other circumstantial evidence corroborating the testimony of Caldwell was the truck driver's identification of the Defendant to the police as one of the two (2) subjects he had seen at Wofford's nursery representing himself as an employee of that nursery.

Defendant's second conviction, burglary, was based upon the acts committed at Melton's Service Center. A person commits burglary who, without the effective consent of the property owner, enters a building other than a habitation not open to the public, with the intent to commit a felony, theft or assault. Tenn. Code Ann. § 39-14-402(a)(1). Caldwell testified that he and the Defendant looked for an open window to enter the station, and when they could not find one that Defendant broke the window. Both entered the station. Caldwell became obsessed with a Harley Davidson motorcycle and left by himself with it. Testimony from Robert Shankle demonstrated that drawers and files had been ransacked, with an amount of approximately $100.00 taken from the station. Officer Cagle testified that he found a bag in Defendant's motel room containing $119.50. Two sets of footprints were found inside the station, verifying the presence of two intruders, Caldwell and the Defendant. Both Cagle and Shankle's testimony corroborate Caldwell's testimony of Defendant's involvement in the burglary.

Defendant was convicted of the offense of theft of property less than $500.00. Theft of property is committed when a person, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the

owner's effective consent. Tenn. Code Ann. § 39-14-103. He was indicted for theft over $10,000.00 alleging theft of both money and a 1976 Harley Davidson motorcycle. The only proof of Defendant's involvement in the actual theft of the motorcycle was testimony that two (2) sets of footprints were seen where the motorcycle was rolled out of the station, and that the Defendant was discovered by the police at the Avalon Motel assisting Caldwell in attempting to hide the motorcycle behind the motel. However, the theft the jury found Defendant guilty of was theft of an amount of property less than $500.00. Robert Shankle testified that an amount of approximately $100.00 was missing from the station. Defendant was found in the motel room with a bag containing $119.50 lying on a night stand near the bed. There was no proof that co-defendant Caldwell was in the motel room following the commission of the crime prior to his arrest. The strongest legitimate view of the evidence and the reasonable inference therefrom is that the Defendant took the money from Melton's and then took it inside his motel room where it was later found by the police. The State is entitled to this inference, and we will not reevaluate the evidence. See Cabbage, 571 S.W.2d at 835. In addition, the circumstances in which the money was found in the motel room corroborates Defendant's participation in the burglary of Melton's Service Center.

The requirements of the corroboration rule are met "if there is some other evidence fairly tending to connect the defendant to the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice." Dykes v. State, 589 S.W.2d 384, 389 (Tenn. Crim. App. 1979) (citing Stanley v. State, 189 Tenn. 110, 222 S.W.2d 384, 386 (1949)). There was sufficient evidence corroborating the three (3) offenses for which Defendant was convicted by which a rational trier of fact could have found Defendant guilty beyond a reasonable doubt.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
JOHN EVERETT WILLIAMS, Judge