# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 7, 2001

## STATE OF TENNESSEE v. MARIO A. JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-01761-62      John P. Colton, Jr., Judge**

---

**No. W2001-00372-CCA-R3-CD - Filed December 17, 2001**

---

The defendant, Mario A. Johnson, was convicted of facilitation to commit first degree murder and especially aggravated robbery. The trial court imposed a Range I sentence of 20 years for facilitation of first degree murder and a concurrent sentence of 23 years for especially aggravated robbery. In this appeal of right, the defendant challenges the sufficiency of the evidence. The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

A.C. Wharton, District Public Defender (of counsel); Garland Ergüden, Assistant Public Defender (on appeal); and William L. Johnson, Assistant Public Defender (at trial), for the appellant, Mario A. Johnson.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and P.T. Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At approximately 9:30 P.M. on September 20, 1997, the victim, Oscar Barnes, was shot to death at his residence in Memphis. His body was discovered by a neighbor, John Speer. A few minutes earlier, Speer had walked by the victim's residence and had seen "a heavy-set, balding" male in what he believed to be a Buick automobile which was parked in the victim's driveway. Speer heard "moderately loud" voices coming from the victim's residence, voices of the victim and two others. He stated that "[i]t sounded like they were arguing." Within three or four minutes after arriving at his own residence, Speer, who lived next door to the victim, heard six to eight gunshots in "pretty quick succession." In his opinion, the shots were fired from two different calibers of guns. According to Speer, who is 6'2" tall, he ran to his front porch, which was located two and one-half

feet above ground level, and peered over a six-foot wooden fence separating his yard from the victim's. Because the victim's porch light was on, Speer was able to see three men run from the victim's residence and get inside the car parked in the driveway. After returning to his residence and watching television for ten to twenty minutes (explaining that "there's always gunshots in [his] neighborhood"), Speer walked to the front door of the victim's residence, discovered the body, and called 911. Speer provided to police the descriptions of each of the individuals involved. He described the first person leaving the victim's residence as having hair "cut into like a V into the back, and it was really bushy and curly." Speer described the second person as a "blur" and the third as having a V-styled haircut with one protruding ear, different from the other one.

At trial, Speer testified that the victim had two beeper shops and made jewelry. He recalled that the victim owned a three- or four-inch gold lion's head pendant with ruby eyes. Speer also knew that the victim owned a Rolex watch with Roman numerals. He described the watch as having two silver stripes on the outside and one gold stripe through the center. He provided the police with a statement and, about a month later, was asked to review a series of photographs. Speer, who testified at trial that he had eight or ten seconds to view the three individuals running from the residence, identified the defendant as the first of the three perpetrators. He identified the defendant based in part upon his V-line haircut but stated that he was also "able to see pretty much of his face in the light on the front porch." Speer expressed certainty in his identification of the defendant.

Sergeant Bryant Jennings of the Memphis Police Department found several shell casings inside the residence of the victim. There was a bullet hole in a sofa. The officer testified that he identified a .9 mm shell casing. It was his opinion that a weapon used in the murder was semi-automatic.

Nikeesha Cunningham, who was 19 years old at the time of the trial, testified that she was dating Franklin Carter at the time of the shooting and was a friend of the defendant. She recalled that on the day of the murder, she went to the victim's residence accompanied by her boyfriend Carter, the defendant, and "Meaty," who was the driver of a two-door Cutlass automobile. She later identified "Meaty" as Demetrius Lay. According to Ms. Cunningham, Carter asked her to telephone the victim to determine whether he had any marijuana to sell. Even though the victim answered that he had none, the four decided to drive to the victim's residence. Ms. Cunningham recalled that she, Carter, and the defendant knocked on the victim's door. She insisted, however, that only Carter and the defendant went inside. Ms. Cunningham explained that when the victim answered the door, Carter instructed her to return to the vehicle. She stated that about five minutes later, she heard nine or ten gunshots in quick sequence. She testified that Carter and the defendant, who were armed with weapons, returned to the vehicle immediately after the shots had been fired. According to Ms. Cunningham, the defendant admitted that he "had to hit [the victim] across the head because he didn't act right." Cunningham testified that the defendant had in his possession a necklace with an eagle having red eyes, a gold Rolex watch, some beepers, and keys owned by the victim. Ms. Cunningham testified that less than three weeks after the offense, Carter committed suicide in her presence, apparently as police came to make an arrest. She was able to identify a shotgun that the

defendant had in his possession on the night of the murder and remembered that the defendant had thrown away the keys and beepers.

Michael Dwayne Lewis, Franklin Carter's cousin, testified that in early October of 1997, Carter pawned a .9 mm pistol, explaining that he had just purchased a car and needed to pay his car note. Lewis agreed to loan the money. At the time, the defendant was sitting in the car operated by Carter. Lewis described the car as a 1988 or '89 Caprice Classic Chevrolet.

Bernadette Carter, the sister of Franklin Carter, testified that she saw her brother and the defendant together a few days after the shooting. She recalled that the defendant, who had tried to sell her some jewelry, was in possession of a gold Rolex watch and a gold necklace with an eagle that had red eyes. She recalled that Ms. Cunningham later showed her a shotgun that had been used in the robbery. She acknowledged that the shotgun had been hidden at her residence and claimed that as soon as she discovered its presence, she turned it over to the police.

Leann Murphy, the mother of the victim, testified that the victim owned and wore a gold Rolex watch. She stated that a lion pendant with ruby eyes had been a gift to the victim from his father.

Dr. Cynthia Gardner, an assistant medical examiner for Shelby County and an associate professor of pathology at the University of Tennessee College of Medicine, performed an autopsy on the victim. She stated that her examination revealed that the victim had 14 gunshot wounds, a number of which would have qualified as fatal.

The defense offered no proof.

In this appeal, the defendant argues that the evidence is insufficient because the conviction rested solely upon the identification made by John Speer and the testimony of Nikeesha Cunningham, an accomplice in the killing. He argues that there were inconsistencies in the evidence offered by the state but concedes that he cannot argue that "there is no evidence to support his conviction."

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the

presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

As to accomplice testimony, the general rule is that the defendant cannot be convicted upon the uncorroborated testimony of an accomplice. Prince v. State, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975). There must be a fact in evidence, entirely independent of the accomplice's testimony, which, taken by itself, would lead to an inference not only that a crime has been committed but also that the defendant is implicated therein. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460, 463 (1963). Only slight circumstances are required to furnish the necessary corroboration. Garton v. State, 206 Tenn. 79, 332 S.W.2d 169, 175 (1960). When the facts are in dispute or susceptible to different inferences, whether a witness is an accomplice is a question of fact for the jury. Conner v. State, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975).

In this instance, John Speer testified that he saw the defendant flee from the residence of the victim immediately after several gunshots had been fired. Ms. Carter testified that within two days of the shooting and robbery, the defendant was in possession of a necklace, pendant, and Rolex watch similar to those owned by the defendant. The victim's mother identified the items in the defendant's possession as those which the victim possessed prior to his murder. Although Ms. Cunningham may have qualified as an accomplice, her testimony that the defendant and her former boyfriend, Franklin Carter, fled from the victim's residence immediately after several gunshots had been fired and that the defendant was in possession of the victim's jewelry was sufficiently corroborated by other evidence in the trial. In our view, the evidence is sufficient to support convictions of facilitation to commit first degree murder and especially aggravated robbery.

Accordingly, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE