IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 5, 2023 Session

## STATE OF TENNESSEE v. TONY THOMAS AND LARONDA TURNER

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**Nos. C17-00608, 17-00382     J. Robert Carter, Jr., Judge**

———————————————————

**No. W2019-01202-SC-R11-CD**

———————————————————

SHARON G. LEE, J., concurring in part and dissenting in part.

I agree that Tony Thomas's murder convictions should be affirmed. The *Brady v. Maryland* issue raised by Mr. Thomas is a close question. Before trial, Mr. Thomas requested the prosecution to provide witnesses' prior inconsistent statements. The trial court ordered disclosure, the prosecution failed to disclose the statements in its possession, and the statements were favorable to Mr. Thomas. In my view, the State's failure to disclose the witness's statements until he testified at trial was nondisclosure, not delayed disclosure. However, the nondisclosed statements had to be material to Mr. Thomas's defense for his *Brady* claim to prevail. Because the statements were not sufficiently material, his *Brady* claim fails.

As to Laronda Turner, the Court does a good job reviewing the evidence at trial. I agree that the evidence is insufficient to support her convictions for murder, and the charges against her must be dismissed.

I dissent from the Court's decision to abrogate the accomplice corroboration rule for procedural and substantive reasons. First, the State failed to raise the issue in the trial court, the Court of Criminal Appeals, or in its response to the Tenn. R. App. P. 11 applications for permission to appeal filed by Ms. Turner and Mr. Thomas.[1] This Court's

_____

[1] The State merely responded to the Tenn. R. App. P. 11 applications by stating in a letter to the appellate court clerk:

> After reviewing the application for permission to appeal filed pursuant to Tenn. R. App. P[.] 11(a) in the above-styled case, this Office has decided not to file a response because *the claims presented are adequately addressed in the opinion of the Court of Criminal*

grant order did not list as an issue abrogation of the accomplice rule. The State waited to raise the issue in the 11th hour—*after* the defendants and the amicus curiae had filed their briefs in this Court. When the State belatedly raised the issue, it did so half-heartedly—raising it only as a sub-issue for review. In my view, the State waived the issue of the abrogation of the accomplice corroboration rule by failing to timely and properly raise it. *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009).

Turning to the merits, the accomplice corroboration rule has served as a necessary safeguard for criminal defendants against untrustworthy accomplice testimony since "the very beginning of the judicial history of this State." *Sherrill v. State*, 321 S.W.2d 811, 814 (Tenn. 1959) ("[T]he Courts . . . of this State seeing the weakness in the accomplice's testimony required corroboration in all felony cases."); *see, e.g.*, *Hall v. State*, 71 Tenn. 552, 560–64 (Tenn. 1879); *Robison v. State*, 84 Tenn. 146, 147–48 (Tenn. 1885); *Clapp v. State*, 30 S.W. 214, 216–17 (Tenn. 1895); *Winfree v. State*, 123 S.W.2d 827, 827 (Tenn. 1939); *Stanley v. State*, 222 S.W.2d 384, 386–87 (Tenn. 1949); *Alexander v. State*, 229 S.W.2d 331, 334–336 (Tenn. 1950); *Garton v. State*, 332 S.W.2d 169, 173 (Tenn. 1960); *State v. Fowler*, 373 S.W.2d 460, 463 (Tenn. 1963); *Binkley v. State*, 434 S.W.2d 336, 337–38 (Tenn. Crim. App. 1968); *Prince v. State*, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975); *State v. Sparks*, 727 S.W.2d 480, 483 (Tenn. 1987); *State v. Henley*, 774 S.W.2d 908, 913 (Tenn. 1989); *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001); *State v. Bough*, 152 S.W.3d 453, 464 (Tenn. 2004); *State v. Little*, 402 S.W.3d 202, 211–12 (Tenn. 2013); *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013). As recently as nine years ago, this Court applied the accomplice corroboration rule. *See State v. Jones*, 450 S.W.3d 866, 888 (Tenn. 2014); *see also State v. Hawkins*, 519 S.W.3d 1, 58–59 (Tenn. 2017) (affirming the intermediate appellate court's application of the accomplice corroboration rule), *overruled on other grounds by State v. Enix*, 653 S.W.3d 692 (Tenn. 2022).

The rule is needed because accomplice testimony is inherently suspect. *Bruton v. United States*, 391 U.S. 123, 136 (1968). While it remains the jury's role to "resolve conflicts in the testimony" and "weigh the evidence," nothing prevents this Court from using the common law to protect fundamental fairness by setting prudent limits on the use of accomplice testimony. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The rule acts as a judicial safeguard against the unrestrained use of accomplice testimony, which, without corroboration, presents "obvious dangers" to the fairness of criminal proceedings. *Sherrill*, 321 S.W.2d at 814. An accomplice may tell a self-serving story to exonerate himself, shift blame to an accused, or curry favor with the prosecution. Having been a party to the crime, an accomplice is susceptible to promises of leniency or threats of punishment. *See* Sandra Guerra Thompson, *Judicial Gatekeeping of Police-Generated Witness Testimony*, 102 J.

---

*Appeals and in the State's brief filed in that court.* If the Court desires a response in this case, please notify me so that I can prepare and file the response. (emphasis added)

Crim. L. & Criminology 329, 346 (2012); Yvette A. Beeman, Note, *Accomplice Testimony Under Contingent Plea Agreements*, 72 Cornell L. Rev. 800, 802 (1987) ("Accomplice plea agreements tend to produce unreliable testimony because they create an incentive for the accomplice to shift blame to the defendant or other co-conspirators. Further, an accomplice may wish to please the prosecutor to ensure lenient prosecution in his own case."). Thus, in cases where an accomplice implicates another person in his crime, there is a concern that the accomplice "would be tempted to commit perjury to gain the benefit or avoid the punishment." Thompson, *supra*, at 346.

Here, the concern about perjured testimony is real, not hypothetical. The accomplice, Demarco Hawkins, told different stories about the murders. In his initial statement to police, he did not implicate Ms. Turner. Yet at trial, Mr. Hawkins testified that Ms. Turner shot one of the victims. Mr. Hawkins admitted that he lied to police and prosecutors to make himself look better. Mr. Hawkins conceded that he was hoping to get a break—to avoid a life sentence—because of his trial testimony. He admitted that saving himself from a life sentence was a powerful motive to lie. This "powerful motive" is what the accomplice corroboration rule seeks to safeguard against, and this rule has worked well for over 150 years in this state.

The accomplice testimony rule is established precedent, and there is no compelling reason for this Court to do away with it. We overrule our previous decisions "sparingly" and "only when the reason is compelling." *Collier*, 411 S.W.3d at 899 (internal quotation marks omitted) (quoting *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005)); *see also Frazier v. State*, 495 S.W.3d 246, 254–55 (Tenn. 2016) (Lee, C.J., dissenting) ("The Court should follow precedent unless 'an error has been committed, and [it] becomes plain and palpable.'" (quoting *State v. McCormick*, 494 S.W.3d 673, 685 (Tenn. 2016))).

There is no indication the accomplice testimony rule is unworkable. The Court concedes the rule is neither obsolete nor outmoded as a statutory or procedural rule—sixteen other states follow the rule.[2] Much is made about Tennessee being the only state with a judicially-created accomplice rule. But it should make no difference whether Tennessee's accomplice testimony rule is based on statute, rule or established precedent. The purpose of the rule—to safeguard against untrustworthy testimony—remains the same. Tennessee does not always follow the lead of other states. For instance, Tennessee is the only state in the country with an attorney general appointed by the Supreme Court. *See, e.g.*, Tenn. Const. art. VI, § 5.

---

[2] Sixteen states have the accomplice corroboration rule based on court rule or statute. *See, e.g.*, Ala. Code § 12-21-222; Alaska Stat. § 12.45.020; Ark. Code Ann. § 16-89-111(e); Cal. Penal Code § 1111; Ga. Code Ann. § 24-14-8; Idaho Code Ann. § 19-2117; Iowa R. Crim. P. 2.21(3); Minn. Stat. § 634.04; Mont. Code Ann. § 46-16-213; Nev. Rev. Stat. § 175.291; N.Y. Crim. Proc. Law § 60.22; N.D. Cent. Code § 29-21-14; Okla. Stat. tit. 22, § 742; Or. Rev. Stat. § 136.440; S.D. Codified Laws § 23A-22-8; Tex. Code Crim. Proc. Ann. art. 38.14.

By deferring to the General Assembly on this issue, the Court concedes too much ground. Our judicially-created accomplice rule does not conflict with any legislatively-created statute or rule. Only this Court has the inherent authority to promulgate rules of practice and procedure for courts of this state. *State v. Mallard*, 40 S.W.3d 473, 481 (Tenn. 2001). This Court, not the General Assembly, is in a better position to decide if such a rule is needed.

Although I dissent from the Court's decision abrogating the rule, I agree with the Court on two important points. First, the trial court should provide a cautionary jury instruction about an accomplice's testimony. This will minimize the threat to fair trials caused by the abrogation of the rule.

Second, the Court properly exercises its discretion by prospectively abrogating the accomplice testimony rule. Retroactive application is not required by precedent, and retroactively abrogating the rule here would be at the expense of fundamental fairness. Although our decisions may involve abstract legal principles, they directly affect the lives and liberties of individuals. Unlike Justice Campbell, I am not willing to set aside concerns of fairness nor do I consider notions of fairness to be irrelevant. Our rulings must be based on applicable law *and* treat individuals with decency and fairness. The Court's decision today does both. The law in effect at the time of the offense should apply—not a change in the law issued nearly nine years later. Ms. Turner had no reason to know the State would seek to change a 150-year-old rule after she filed her brief in the Supreme Court. Ms. Turner's decision about her trial strategy and whether to plead guilty would certainly have been different if she could have predicted this Court's ruling. In sum, fundamental fairness requires prospective application of the Court's ruling.

_____
SHARON G. LEE, JUSTICE

- 4 -