# National Union Fire Insurance Company v. McClure et al.

(Decided June 10, 1930.)

FRANK M. DRAKE and CHESTER O. CARRIER for appellant.

J. M. CAMPBELL for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

The appellees, Mrs. George McClure and others, recovered judgment for $794 against the appellant, National Union Fire Insurance Company, on a policy insuring their barn, which was destroyed by fire on February 3, 1928. The court is constrained to reverse that judgment upon the ground that the verdict is flagrantly against the evidence.

On March 29, 1924, a five-year policy was issued covering certain property, including the barn. A premium of $27.76 was then paid, and a note for $111.04 given, payable in annual installments of $27.76. Both the policy and the note provided that the company should not be liable under its contract while any installment of the prem-

ium note remained unpaid after maturity. These provisions of forfeiture or suspension of liability are valid and enforceable, and the failure of the insured to pay the premium when due is a sufficient defense in an action on the policy to recover for loss sustained during the period when such premium is past due and unpaid. Cheatham v. Home Insurance Co., 185 Ky. 494, 215 S. W. 281. The issue involved is whether the premiums due April 1, 1927, had been paid before the fire.

On February 6, 1928—which it is to be observed was three days after the fire—the company's Memphis office received a check from appellees bearing date of February 2d, the day before the fire. Through mistake and without knowledge of the loss its agents stamped the note "paid" and mailed it to the appellees. It was discovered, according to their testimony, that the installment due on April 1, 1927, had never been paid, and, having learned of the fire, the amount of the premium was mailed back to the appellees, but its check was returned by them.

The appellee Fred McClure testified that in August, 1927, more than four months after the premium became due, he took $27.76 in cash to a friend, one Ed. Taylor, in Leitchfield, and had Taylor address an envelope to the company, and he inclosed either the cash or his (Taylor's) check, for the amount due April 1, 1927, which envelope thus addressed and stamped he himself had mailed at the postoffice. He stated, that he obtained a receipt for that payment, but it had been burned. The reason assigned for making the remittance at such a late date was that in the previous May he had suffered a small windstorm loss under the policy, but could not collect for it because he had not then paid the premium, and, in fear of another loss, he just concluded to pay it. In contradiction of this evidence it is shown that three weeks before the trial, McClure, in a deposition given as on cross-examination, had stated over and over again that he had given Taylor the money and Taylor had sent his individual check to the company; that he had seen him write it and put it in the envelope; that, while he had not gotten a receipt, Taylor had told him that his check had been returned marked "paid." It is proved that theretofore appellees had been a few days late in paying each of the other installments, and the only explanation given by McClure for having mailed on February 2, 1928, his own personal check for the premium which would be due

two months hence was that he had become mixed up on the payment of his 1927 installment and just happened to think about sending it in.

Taylor testified that McClure had come to him "quite a few times" and had him send off his payments of the annual installments. As to whether he had done so in August, 1927, the witness would only say that it was his recollection that he had, and that he was under the impression that he had done so; that he had no reason to tax his memory as to the matter. It is apparent from his evidence that Taylor based his impression on the custom and habit of favoring McClure in that way. Upon being pressed for a definite answer, the witness declined to say that on this occasion he had made the remittance as claimed by McClure. He did testify that on these occasions when he had thus favored McClure and others he had addressed the envelopes and simply inclosed the party's own check; "or if they would pay me the money I would write my check and send it to the company; on this particular occasion I don't remember which was done."

It was conclusively established by the insurance company that no check had passed through Taylor's bank accounts for the sum of $27.76 during the entire year of 1927, and that during the month of August no check in any sum payable to the appellant company had gone through his accounts. Taylor had testified that sometimes he had included in a single check premiums of more than one party who had asked a similar service of him. A thorough search of the company's records failed to reveal any remittance for this premium prior to the receipt of the check on February 6, 1928, four days after the fire. Its receipt on that day is conclusively shown, and it is further established that in the ordinary course of transit mail posted at Leitchfield arrives in Memphis in less than twelve hours.

In Continental Insurance Co. v. Hargrove, 131 Ky. 837, 116 S. W. 256, there was involved the payment of an installment due on a premium note which was received by the company several days after a loss had been suffered. The check bore a date a few days before the fire, and the insured testified that he had mailed it that day. Adopting the statement that the remittance had in fact been mailed in a properly addressed and stamped envelope before the fire, it was held nevertheless that the controlling point was its receipt, and that the evidence was

conclusive that it had not been received by the company before the loss had occurred. We need not here repeat the reasons supporting that conclusion.

Considering the evidence and all reasonable inferences to be drawn therefrom, we are compelled to reverse the judgment because the verdict is clearly and palpably against the evidence.

We have considered the complaint of the appellee that the trial court erred in overruling their exceptions to depositions taken in behalf of the appellant in Memphis and Pittsburg, on the ground that reasonable notice had not been given. The complaint as to the depositions taken in Memphis is wholly without merit; and, as to the ones taken in Pittsburg, it is sufficient to say that, if appellees were entitled to more time than that given, as they contended, under section 571 of the Civil Code of Practice, they could have required the taking of those depositions on interrogatories.

The judgment is reversed.