# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. JONATHAN THORNTON

**Appeal from the Criminal Court for Greene County**
**No. 00-CR-167C     James Edward Beckner, Judge**

---

**No. E2001-02491-CCA-R3-CD**
**September 30, 2002**

---

The defendant, Jonathan Thornton, was convicted of one count of theft of property valued at more than $1,000 but less than $10,000 and one count of theft of property valued at less than $500. The trial court imposed concurrent sentences of two years and 11 months and 29 days, respectively. In this appeal of right, the defendant asserts (1) that the evidence is insufficient to support his convictions, (2) that the trial court erred in its instructions to the jury, and (3) that the trial court erred by denying an alternative sentence. Because the trial court erred by denying an alternative sentence, the defendant's sentence is modified to a sentence of split confinement with nine months to be served in confinement and the balance to be served on probation.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed as Modified**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Susanna L. Thomas, Newport, Tennessee (on appeal), and Richard Talley, Dandridge, Tennessee (at trial), for the appellant, Jonathan Thornton.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; and Cecil Mills, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

On October 5th, 2000, Robert Thornburg of Mohawk discovered that his 2000 Honda 300 Four Trax all-terrain vehicle had been stolen from the back porch of his residence. He estimated that the vehicle had a fair market value at the time of the theft of $5,000.

Nine days later, Steve Sauceman discovered that his 2000 Honda Rancher ES ATV was stolen from the back of his truck. The four-wheeler had a fair market value of $5,000.

Joshua Allen Anderson, who lived with the defendant in October of 2000, testified that he, the defendant, and Eric Frias had taken ATVs from the Thornburg and Sauceman residences during that month. According to Anderson, the defendant borrowed his father's truck the day before the Thornburg theft and supplied hand-held radios to be used during the theft. The three men dressed in dark clothing, gathered tools into a red "bookbag," and put on gloves in preparation for the crime. They drove the truck to the Thornburg residence and pushed a red Honda Four Trax 2000 ATV down a hill and hid it in the woods. Anderson testified that in preparation for the Sauceman theft, the three men again dressed in dark clothing, gathered their tools, and borrowed the defendant's father's truck. They lifted an ATV out of the back of Sauceman's truck and drove it to the location of the hidden four-wheeler. There they placed one ATV in the back of their truck and the other in a trailer that the defendant had borrowed from a man named Carlos. Later, they sold one of the four-wheelers. The other was stolen from them before they could sell it.

Anderson admitted that he had previously entered pleas of guilt to eight felony theft convictions in relation to the theft of a number of ATVs. At the time of trial, he was incarcerated in the Tennessee Department of Correction boot camp. Anderson also conceded that the defendant had informed the police about his involvement and that of Eric Frias. He acknowledged that he had fled to Illinois after being confronted by the police in November of 2000.

At trial, Alichia Frias testified that she lived with Eric Frias, Anderson, the defendant, and the defendant's girlfriend, Ashley Evans, in October of 2000. Ms. Frias stated she did not participate in the Thornburg and Sauceman thefts, but acknowledged that she had pled guilty to one count of facilitation of aggravated burglary and one count of theft over $1,000 in relation to an unrelated theft. According to Ms. Frias, she saw the defendant, Anderson, and Eric Frias dress in dark clothing and gather tools in preparation for the theft of four-wheelers in October of 2000. According to Ms. Frias, the defendant provided hand-held radios and gloves to be used during the crimes.

Detective James Randolph of the Greene County Sheriff's Department testified that he questioned the defendant in November of 2000 about the theft of a number of four-wheelers in the area. The defendant directed him to the residence shared by Anderson and the Friases. When Detective Randolph arrived at the residence with another cruiser, Anderson and Eric Frias fled and Alichia Frias attempted to drive away in a car. Alichia Frias was arrested at the scene and Anderson and Eric Frias were later arrested in Illinois. The ATVs taken from Thornburg and Sauceman were never recovered. Detective Randolph acknowledged that the defendant was very cooperative during the investigation.

Carlos Bachtel, who lived behind Ashley Evans' mother, was a defense witness. While admitting that he had loaned his trailer to the defendant on at least two occasions, he testified that he had not done so in October of 2000. According to Bachtel, the trailer was at his daughter's residence from October 1, 2000, until the time of trial.

Joy Covington, Ashley Evans' mother, testified that Anderson telephoned her house a number of times after his arrest. While she initially refused to accept the charges for his collect calls, Ms.

Covington relented on one occasion. She claimed that during their conversation, Anderson informed her that "if [the defendant] did not start taking his calls and helping him out, he would take [the defendant] down with him."

Defense witnesses Chris Hickman and Phillip Ashley testified that they had never purchased four-wheelers from the defendant. Ashley admitted purchasing an ATV from Eric Frias for $800.

The defendant, who testified in his own behalf, conceded that he had borrowed Bachtel's trailer but denied using it to take four-wheelers. He acknowledged that he owned hand-held radios but claimed that he had gotten them from his father's pawn shop. The defendant denied participation in either of the crimes.

**I**

The defendant first asserts that the evidence is insufficient to support his conviction. Specifically, he complains that there is no evidence, other than the testimony of accomplices, that he participated in the thefts. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

It is well settled that a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice. An accomplice has traditionally been defined as one who knowingly, voluntarily, and with common intent with the principal offender, joins in the commission of a crime. Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895). Only slight circumstances are sufficient corroboration. Those circumstances must, however, be entirely independent of the accomplice's testimony and lead to an inference that not only has a crime been committed but also that the defendant is implicated in that crime. Garton v. State, 206 Tenn. 79, 332 S.W.2d 169, 175 (1960). Whether a witness's testimony has been sufficiently corroborated is a function entrusted to the jury as the trier of fact. Sherrill v. State, 204 Tenn. 427, 434, 321 S.W.2d 811 (1959); Stanley v. State, 189 Tenn. 110, 222 S.W.2d 384, 386 (1949).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective

-3-

consent." Tenn. Code Ann. § 39-14-103. Theft of property valued at more than $1,000 but less than $10,000 is a Class D felony. Id. § 39-14-105(3). Theft of property valued at less than $500 is a Class A misdemeanor. Id. § 39-14-105(1). "Value" is defined as follows:

(i) The fair market value of the property . . . at the time and place of the offense; or
(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. § 39-11-106(35)(A). Owners are competent by fact of ownership to testify to the value of the property stolen. State v. Hamm, 611 S.W.2d 826 (Tenn. 1981); Reaves v. State, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975).

Here, Anderson testified that the defendant participated in each of the two thefts. He claimed that the defendant borrowed his father's truck and provided hand-held radios which were used in each of the two crimes. Alichia Frias, who was not involved in either theft, claimed to have seen the defendant, Anderson, and Eric Frias dress in dark clothing, gather tools, and put on gloves in preparation for the thefts. There was testimony that a trailer which had been borrowed from Bachtel was used in the second theft. The defendant knew Bachtel, who did indeed own a trailer at the time of the Sauceman theft. Corroboration of an accomplice's testimony need only be slight. In our view, the corroborative testimony met that standard.

**II**

Next, the defendant contends that the trial court erred by failing to correctly instruct the jury as to the law governing accomplice testimony. In a related claim, he asserts that the trial court erred by denying his requested jury instruction on accomplice testimony. The defendant also complains that the trial court should have instructed the jury that Alichia Frias was, as a matter of law, an accomplice to the crimes.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

While the defendant may request special instructions, the jury charge provided by the trial judge is sufficient where it adequately states the law. See, e.g., State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980). When a trial court's charge to the jury is accurate and complete, it need

not give additional special instructions requested by the defendant. See State v. Story, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980).

Here, neither the jury instructions nor the order denying the defendant's special request appears in the record on appeal. The record contains nothing from which this court could determine the content of the instruction on accomplice testimony. Moreover, while the record does contain a copy of the defendant's requested jury instruction regarding the testimony of accomplices, the request does not suggest that Ms. Frias should be declared an accomplice. In consequence, the record is inadequate for a review on the merits. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review results in the waiver of that issue. Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

### III

As his final issue, the defendant asserts that the trial court erred by denying an alternative sentence. The state disagrees. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In arriving at a sentence of two years, the minimum within the range, the trial court found enhancement factor (2), that the defendant was the leader in the commission of an offense involving two or more criminal actors, applicable. See Tenn. Code Ann. § 40-35-114(2). In mitigation, the trial court concluded that the defendant's criminal conduct neither caused nor threatened serious bodily injury. See id. § 40-35-113(1). The trial court ordered a sentence of eleven months and twenty-nine days for the misdemeanor theft conviction, to be served concurrently with the felony sentence of two years. The defendant does not quarrel with the enhancement and mitigating factors applied by the trial court, nor does he complain that the sentences were excessive. He simply asserts that the trial court erred by denying an alternative sentence.

An alternative sentence is any sentence that does not involve total confinement. See State v. Fields, 40 S.W.3d 435 (Tenn. 2001). As a standard offender convicted of a Class D felony, the defendant is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In addition, because the sentence imposed is eight years or less, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When, as here, the defendant is entitled to the statutory presumption favoring alternative sentencing, the state must overcome the presumption by the showing of "evidence to the contrary." Ashby, 823 S.W.2d at 169; State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995) overruled in part on other grounds by State v. Hooper, 29 S.W.2d 1 (Tenn. 2000); see Tenn. Code Ann. §§ 40-35-102(6), -103 (1997). Conversely, it is the defendant who has the burden of demonstrating his suitability for total probation. Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-303(b) (1997).

While recognizing that the defendant was entitled to the presumption in favor of alternative sentencing and that probation should automatically be considered, the trial court denied both and ordered a fully incarcerative sentence. The trial court, observing that Anderson, Alichia Frias, and Eric Frias had been given sentences of incarceration, concluded that confinement was necessary to avoid disparate sentences. See Tenn. Code Ann. § 40-35-102(2)(1997). One of the purposes of the Sentencing Act is to "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentences." Tenn. Code Ann. § 40-35-102(2). Our supreme court has held that "some disparity [in sentencing] is justified, depending on the particular crime and the individual criminal." State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). Moreover, this court has determined that "each case must be bottomed upon its own facts," State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987), and that individualized punishment is the essence of alternative sentencing, State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In consequence, alternative sentences are to be considered on a case-by-case basis. While this approach may result in some disparity, each case will be treated fairly and consistently based on the procedures and principles that guide all sentencing determinations and an assessment of the facts and circumstances presented. Moss, 727 S.W.2d at 235. In our view, the trial court erred by ordering a fully incarcerative sentence because others

involved were sentenced to confinement. The record is devoid of any indication of whether the other sentences were negotiated, what proof was presented at the sentencing hearings, and what findings were made by the trial court judge who imposed the sentences. A proportionality analysis under these circumstances is not possible.

As indicated, this defendant is entitled to a presumption in favor of an alternative sentence "absent evidence to the contrary." See Tenn. Code Ann. § 40-35-102(6). What constitutes such evidence can be found in Tennessee Code Annotated section 40-35-103, which provides, in pertinent part, as follows:

> Sentences involving confinement should be based on the following considerations:
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar crimes;
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

Initially, we note that neither subsection (A) nor subsection (C) are applicable. The defendant has no criminal record. Measures less restrictive than confinement have not frequently or recently been applied unsuccessfully to the defendant. While the trial court quoted subsection (B) in its denial of an alternative sentence, it is unclear from the record whether the court, in fact, concluded that the section was applicable. Certainly, the trial court made no factual findings pertaining to that section.

Before a trial court may deny an alternative sentence based upon the circumstances of the offense, those circumstances "must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring [an alternative sentence]." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). While serious crimes, the circumstances of the offenses in this case do not rise to the "exaggerated degree" level. To the extent that the trial court relied on this factor to deny an alternative sentence, the decision was in error.

> Our supreme court in State v. Hooper, 29 S.W.3d 1, 10 (Tenn. 2000), held that:
> we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration

of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

Our high court also suggested several guiding factors for determining whether a need for deterrence is present and whether incarceration is "particularly suited" to achieve that goal:

(1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole;
(2) whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;
(3) whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;
(4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective;
(5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12. Our supreme court cautioned that "because the 'science' of deterrence is imprecise at best, the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need." Id. Our high court noted that

[d]eterrence is a complex psychological process, and the focus on deterrence through changes in the penalty structure or sentencing behavior represents but one part of the calculus. Section 40-35-103(1)(B) recognizes this reality as the language of the statute requires only that confinement be "particularly suited" to provide a deterrent effect, and it does not require proof that incarceration "will" or "should" deter others from committing similar crimes.

Id. at 9. Here, the trial court failed to consider whether there existed a need to deter similar crimes or whether incarceration of the defendant was particularly suited to that need. Further, the record does not support the presence of either of these factors. No evidence was presented that would support a finding of any of the five factors enumerated in Hooper. In our view, there is insufficient proof to support deterrence as a basis for the denial of an alternative sentence. See Ashby, 823 S.W.2d at 170.

Finally, the trial court observed that "from the jury's finding in the case, [the defendant] testified falsely under oath" and denied an alternative sentence based upon the defendant's lack of candor. "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." United States v. Grayson, 438 U.S. 41, 51 (1978). "'[A] fact like

the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.'" Id. (quoting United States v. Hendrix, 505 F.2d 1233, 1236 (2nd Cir. 1974)).

Here, the trial court apparently determined that because the defendant testified on his own behalf, but was found guilty, he necessarily lied under oath. Otherwise, the trial court did not make any factual finding that the defendant had indeed offered untrue testimony. See Grayson, 438 U.S. at 51 (concluding that when a trial court finds a defendant's lie to be flagrant it "may be deemed probative of his prospects for rehabilitation"). While lack of candor is an appropriate consideration in this instance, it is our view that lack of candor standing alone would not altogether eliminate the prospect of an alternative sentence. The defendant's lack of candor is, however, sufficient to deny of a sentence of full probation.

Because the state failed to overcome the presumption in favor of an alternative sentence, it is our view that the defendant's sentence must be modified. The twenty-year-old defendant has no criminal record, a steady employment history, and is currently working on his post-secondary education. The proof established that the circumstances of the offenses, while not sufficiently reprehensible to justify the denial of an alternative sentence, were serious. Under these circumstances, a period of incarceration is appropriate. The defendant's felony sentence is, therefore, modified for an effective sentence of split confinement with nine months to be served in the Department of Correction and the balance to be served on probation.

_____
GARY R. WADE, PRESIDING JUDGE