IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. SALVATORE BRUNETTI

**Appeal from the Circuit Court for Dickson County**
**No. CR6099     Allen W. Wallace, Judge**

_____

**No. M2003-00476-CCA-R3-CD - Filed June 1, 2004**

_____

The defendant, Salvatore Brunetti, was convicted of voluntary manslaughter. The trial court imposed a sentence of five years in the Department of Correction. In this appeal, the defendant asserts that the trial court erred by denying an alternative sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

William B. (Jake) Lockert, III, District Public Defender, for the appellant, Salvatore Brunetti.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 28, 2002, Deputy Casey Groves of the Dickson County Sheriff's Department received a report that the defendant had shot his wife and threatened suicide. Deputy Groves and two other officers drove to the residence, closed the road to traffic, and surrounded the residence. As Officer Humphreys knocked on the front door and announced "Sheriff's Office," Deputy Groves took cover in the front yard. When the defendant opened the door, he was placed on the ground and handcuffed. Upon entering the residence, the officers discovered the victim, Tressia Wallace, lying face down on the kitchen floor. A handgun lay on a nearby table. While searching the upstairs bedrooms, the officers found a mentally disabled woman who boarded with the victim. She was unaware of the situation.

Deputy John Suddeath, who arrived on the scene just after Deputy Graves and Officer Humphreys, stood guard over the defendant while the other two officers entered the residence.

According to Deputy Suddeath, the defendant, who was wearing only underpants, smelled of alcohol and had slurred speech.

Patricia Walsh, an EMS first responder, was the first of the medical personnel to arrive on the scene. She examined the victim and did not find a pulse. After other medical personnel were unable to detect any vital signs, the victim was declared dead. The medical examiner's report established that the cause of death was a single gunshot wound to the chest.

Detective Rick Smith testified that several guns, including a Rossi .38 caliber handgun found in the kitchen, were seized from the defendant's residence. The defendant, who appeared to the officer to be intoxicated, admitted using the five-shot revolver to shoot the victim but claimed it was an accident. Detective Smith stated that the defendant contended that he and the victim were arguing and that when he picked up the gun, it discharged. Detective Smith conceded that the defendant was very cooperative during the investigation and had assisted the police by drawing diagrams of the scene.

The defendant testified that on the day of the shooting, he and the victim had purchased flowers and potting soil and drank beer as they planted the flowers. He claimed that he returned to the residence after a short time and eventually called the victim to dinner. The defendant contended that when she came inside, she was angry because he had not helped with the flowers and an argument ensued. The defendant explained that he picked up the gun because he feared the victim might try to use it. They continued to argue as he held the gun. The defendant admitted that he told the victim to "shut up" but denied any intention to fire the gun or shoot the victim. According to the defendant, he did not realize he had shot her until she grabbed her chest and fell to the floor. The defendant telephoned 911. He testified that he did not leave because he did not want to leave the mentally disabled woman whom his wife had cared for "for over 20 years." The defendant claimed that he continued to drink alcohol until the police arrived.

The defendant testified that he did not attempt to make bail pending trial because he did not want to return to the residence he shared with the victim. He stated that he had continued to pay the mortgage and other bills out of his own account even while he was incarcerated. According to the defendant, he did not gain financially from the victim's death because the house was hers, they had no joint bank accounts, and he was not the beneficiary of her will or any life insurance policies.

At the sentencing hearing, the victim's daughter, Yvonne Grady, testified that the defendant pursued the victim and "told her he would pay off her house and they would travel the world and live the good life." Shortly after moving into the victim's residence, however, the defendant quit his job as a car salesman. Ms. Grady testified that her relationship with the victim was strained as a result of the victim's marriage to the defendant. Ms. Grady recalled that the victim visited her in the days before she was killed and said that she "made a grave error" and wanted the defendant to move out. While acknowledging that the victim had "a temper," Ms. Grady claimed that the victim was not a heavy drinker and became angry only if provoked.

In this appeal, the defendant asserts that the trial court erred by denying an alternative sentence. The state disagrees. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a class C felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35- 210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In arriving at a sentence of five years, the trial court found enhancement factor (9), that the defendant employed a firearm during the commission of the offense, applicable. See Tenn. Code Ann. § 40-35-114(9) (1997). In mitigation, the trial court concluded that the defendant had no prior felony convictions and that the defendant was remorseful. See id. § 40-35-113(13). The defendant asserts that the trial court erred by denying an alternative sentence.

An alternative sentence is any sentence that does not involve total confinement. See State v. Fields, 40 S.W.3d 435 (Tenn. 2001). As a standard offender convicted of a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In addition, because the sentence imposed is eight years or less, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When,

as here, the defendant is entitled to the statutory presumption favoring alternative sentencing, the state must overcome the presumption by the showing of "evidence to the contrary." Ashby, 823 S.W.2d at 169; State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled in part on other grounds by State v. Hooper, 29 S.W.2d 1 (Tenn. 2000); see Tenn. Code Ann. §§ 40-35-102(6), -103 (1997). Conversely, it is the defendant who has the burden of demonstrating his suitability for total probation. Bingham, 910 S.W.2d at 455; see Tenn. Code Ann. § 40-35-303(b) (1997).

As indicated, this defendant is entitled to a presumption in favor of an alternative sentence "absent evidence to the contrary." See Tenn. Code Ann. § 40-35-102(6). What constitutes such evidence can be found in Tennessee Code Annotated section 40-35-103, which provides, in pertinent part, as follows:

> Sentences involving confinement should be based on the following considerations:
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar crimes;
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

Initially, neither subsection (A) nor subsection (C) is applicable. The defendant has only one prior conviction, a misdemeanor that occurred nearly twenty years before the offense at issue. Further, measures less restrictive than confinement have not frequently or recently been applied unsuccessfully to the defendant. The trial court based its denial on subsection (B). The trial court made the following observations regarding the seriousness of the offense:

> I tried this case. I listened to the proof in this case. I've drawn a conclusion in this case that neither side has mentioned. I've listened to the proof of how this death occurred up there. I watched [the defendant]. [The defendant] is a volatile person. He needs a gun about like a hog needs a side saddle. The fortunate thing about this case, he could never have a gun anymore. He can't even sleep in a house where there is a gun. He's volatile. He showed that here in the courtroom. A witness testified to something that I didn't think had anything much to do with the case, nothing to get upset about and he just exploded in the courtroom.
> So you take his action in the courtroom and the action that's described the day of that killing and the way he described that, there is so much similarity between the two and not only that the pre-sentence report shows that sometime in the past for some reason he had to go to family therapy or went on his own. Anyway he went to family therapy. I can't assume it was because of his volatility. But when I see the

way he acted in the courtroom and I see the description of that incident up there it does make him a volatile person.

Keeping that in mind in sentencing, I realize that is not an enhancement factor. In mitigating factors I can look at anything, but that's not an enhancement factor so I don't want the appeals court to think that I'm using that as an enhancement factor. I'm just showing that when I consider depreciating the seriousness of the offense I'm dealing with a man here that is a volatile person.

Finally, the trial court observed that the defendant lacked candor:

Now, he says he was in the Air Force from '54 to '59. He testified at trial he was in the Air Force. There is no other proof in this record where he was stationed, what he did, and as a side line I've never heard of a security clearance called a rating. I would like to look at a DD Form 214, but I haven't seen it. I've never heard of a clearance called a rating before and I've dealt with thousands.

Before a trial court may deny an alternative sentence based upon the circumstances of the offense, those circumstances "must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring [an alternative sentence]." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). The proof established that the defendant shot the unarmed victim in their home while they argued. The defendant, originally charged with first degree murder, was granted leniency by the jury in the form of a conviction for the lesser offense of voluntary manslaughter. He will be eligible for release after service of thirty percent of a five-year sentence. In our view, to further lessen his sentence would depreciate the seriousness of the offense.

Further, lack of candor is an appropriate consideration. "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." United States v. Grayson, 438 U.S. 41, 51 (1978). "'[A] fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.'" Id. (quoting United States v. Hendrix, 505 F.2d 1233, 1236 (2nd Cir. 1974)). It is our view that the lack of candor, when combined with the need to avoid depreciating the seriousness of the offense, is sufficient in this instance to support the trial court's denial of an alternative sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE